UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIE JARVIS, | Civil Action No. 14-7766 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| HENRY GLIOTTONE, et al., | |
| Defendants. | |

**WOLFSON, UNITED STATES DISRICT JUDGE:**

### I. INTRODUCTION

This matter has been opened to the Court by three separate motions seeking judgment on the pleadings with respect to Plaintiff's Second Amended Complaint. ("SAC"). The SAC alleges that Plaintiff was arrested without probable cause and unlawfully detained on July 11, 2014, and that his arrest and subsequent detention violated his rights under 42 U.S.C. § 1983. For the reasons explained in this Opinion, the Court will grant the motions in part and deny them in part, and will also screen the Complaint pursuant 28 U.S.C. § 1915A.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 8, 2014, Plaintiff filed a Complaint in the Superior Court of New Jersey, Middlesex Vicinage, which was not served on the parties. Thereafter Plaintiff filed a First Amended Complaint in the Superior Court of New Jersey on November 6, 2014. (ECF No. 1, First Amended Complaint.) On December 12, 2014, Defendants removed this matter to federal court. On February 25, 2015, Plaintiff filed a Motion to Amend the Complaint. (ECF No. 18.) On March 10, 2015, the matter was reassigned to the undersigned. (ECF No. 19.) On April 15, 2015, Defendants Philip Barow, Anthony Caputo, Erika DiMarcello, and Henry Gliottone filed a

1

Response in Opposition to Plaintiff's Motion to Amend the Complaint. (ECF No. 23.) On May 18, 2015, Judge Arpert granted Plaintiff's Motion to Amend the Complaint. (ECF No. 27.) On June 22, 2015, Plaintiff filed his Second Amended Complaint ("SAC"), which is the operative Complaint here.[1] (ECF No. 34.)

In the SAC, Plaintiff alleges that on July 11, 2014, he was approached on the street in New Brunswick by Kevin Conway and Vincent Monaghan, who are identified as police officers with the New Brunswick Police Department. (SAC at 5-6.) The officers allegedly did not have a search or arrest warrant at the time of the encounter. Conway allegedly stated to Plaintiff that "some one [sic] said the Plaintiff had a gun." (*Id.* at 6.) Conway then "immediately handcuffed the Plaintiff without giving the Plaintiff the opportunity to walk away or ignore the accusations" and "frisked the Plaintiff without consent." (*Id.*) Conway allegedly did not recover a weapon during the search. Plaintiff was then placed in the back seat of a patrol car and was informed that he was "being detained". (*Id.*) Plaintiff was not given *Miranda* warnings or informed of the reason(s) for his arrest and was transported to New Brunswick Police Headquarters. Plaintiff alleges that Monaghan was present and "failed to intervene" in the false arrest. (*Id.* at 5.) Plaintiff further alleges that Anthony Caputo, identified as the Police Director at New Brunswick Police Department, failed to "do a thorough investigation of the arrest" and failed to train his officers. (*Id.*)

---

[1] On January 8, 2015, Defendant Barow moved to dismiss the SAC. (ECF No. 5.) In the SAC, Plaintiff alleges that Philip Barow, a municipal judge, "affirmed the arrest over the telephone without investigating physical evidence written, verbal, or recorded statements from an alleged victim in his presence." He further alleges that Judge Barow did not sign the complaint warrant until 5 days after Plaintiff's arrest. (*Id.* at 5.) On August 7, 2015, the Court granted the motion to dismiss the SAC as to Judge Barow on the basis of judicial immunity. (ECF Nos. 41-42.)

Plaintiff also challenges the procedures for obtaining the complaint-warrant against him. According to the SAC, Defendants Henry Gliottone and Erika DiMarcello, police officers with the New Brunswick Police Department, did not bring the alleged victim before a neutral and detached magistrate to sign a complaint against Plaintiff or have the victim make a verbal, written or recorded statement in the presence of a judicial officer. (SAC at 7.) Instead, Gliottone allegedly signed the complaint as the complaining witness with an unreadable signature. (*Id.*) DiMarcello allegedly telephoned Judge Barow for authorization for the arrest without presenting physical evidence and written, verbal, or recorded statements from the alleged victim. (*Id.*) On Saturday July 12, 2014, Judge Barow authorized Plaintiff's arrest over the telephone "without investigating physical evidence and bare [sic] witness to written, verbal, or recorded statements from the alleged victim." *Id.* Plaintiff alleges that he was arraigned on July 15, 2014. (*Id.*) At his arraignment, Plaintiff learned that he was being charged with kidnapping and weapons possession, and that his bail had been set at $500,000. (*Id.*) Although Plaintiff states that Judge Barow authorized his arrest on July 12, 2014, he also alleges that a probable cause determination was not made and the complaint warrant was not actually signed by Judge Barow until July 16, 2014, five days after Plaintiff's arrest. (*Id.*)

After his arrest, Plaintiff was apparently transferred to the Middlesex County Adult Correctional Center. (*Id.* at 7.) Plaintiff alleges that Mark Cranston, identified as the Warden at Middlesex Adult County Correctional Center, also failed to investigate Plaintiff's arrest and bring Plaintiff before a neutral magistrate for a probable cause determination within 48 hours of his arrest. (*Id.* at 5, 7.) Plaintiff also alleges that Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan failed to bring him before a neutral magistrate for a probable cause determination within 24-48 hours of his arrest. (*Id.*)

Finally Plaintiff alleges that Ronald Rios, identified as the "county counsel[o]r" for Middlesex County, "lack the training as an overseer for public entities for the county of Middlesex." (*Id.* at 5.)

At the time Plaintiff filed his SAC, his state criminal proceedings with respect to the underlying charges were still ongoing. On September 21, 2015, Judge Arpert stayed the matter pending the conclusion of Plaintiff's state criminal proceedings and administratively terminated the matter during the stay. (*See* ECF No. 49.) On January 19, 2017, Plaintiff filed a letter with the Court, acknowledging that he had pleaded guilty to certain charges and stating that he wished to proceed with the instant action. (ECF No. 62.) On March 6, 2017, Counsel for Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan submitted a letter to the Magistrate informing the Court that Plaintiff had pleaded guilty to charges of criminal attempt and burglary in connection with the underlying criminal matter. Counsel also contended that the reopening of this matter was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). On March 10, 2017, Judge Arpert lifted the stay and ordered the parties to file their dispositive motions regarding whether Plaintiff's SAC was barred no later than April 14, 2017. (ECF No. 63.)

On April 10, 2017, Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan filed a motion to dismiss the SAC. (ECF No. 65.) On April 12, 2017, Defendant Cranston filed a motion to dismiss the SAC and joined Defendant Caputo, Conway, DiMarcello, and Monaghan's motion. (ECF No. 66). On April 18, 2017, Defendant Rios filed a motion to dismiss the SAC and joined the other Defendants' motions. (ECF No. 67.) Although there is nothing in the record to suggest that Plaintiff has not received the motion papers, he has not filed opposition.

## III. STANDARD OF REVIEW

At this juncture, all Defendants have filed Answers to the SAC. (*See* ECF Nos. 39, 40, 47.) As such, the Court will treat the instant motions as motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). As with a Rule 12(b)(6) motion, this Court "view[s] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff." *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004), as amended (Mar. 8, 2004). That is, the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Id.*

In considering a motion to dismiss, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In ruling on a motion to dismiss, Courts are required to liberally construe pleadings drafted by *pro se* parties. *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.*

(citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV.   ANALYSIS

### a. Argument that Plaintiff's SAC is barred by Heck

Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan's motion argues that Plaintiff's § 1983 claims are barred as a matter of law by *Heck v. Humphrey*, 512 U.S. 477 (1994) because Plaintiff pleaded guilty to charges stemming from his arrest and has not invalidated his conviction. (*See* ECF No. 65-3, at 9-10.) Defendants Cranston and Rios have "joined" the motion for dismissal pursuant to *Heck*. Defendants have submitted a copy of the Judgment of Conviction ("JOC") showing that Plaintiff was charged with Kidnapping under N.J.S.A. 2C:13-1B(1) and N.J.S.A. 2C:13:1B(2) (Counts 1 & 2); Conspiracy to commit Kidnapping pursuant to N.J.S.A. 2C:5-2 (Count 2); Criminal Attempt pursuant to N.J.S.A. 2C:5-1 and Burglary pursuant to N.J.S.A. 2C:16-2 (Count 3); and Possession of a weapon for a Unlawful Purpose pursuant to N.J.S.A. 2C:39-4A (Count 4). (ECF No. 65-4, Ex. A.) Plaintiff pleaded guilty to Count Three, the Attempt and Burglary charges, and was sentenced to a three-year term of imprisonment. (*Id.*) The Court may take judicial notice of the resolution of that case. *See Mosby v. O'Brie*, 532 F. App'x 84, 85 (3d Cir. 2013) (citing *Gov't of the V.I. v. Testamark*, 528 F.2d 742, 743 (3d Cir. 1976)). Because the JOC is a matter of public record and its authenticity has not been disputed, the Court may also consider it without converting the motions for judgment on the pleadings to one for summary judgment. *See Sands v. McCormick*,

502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

Based on the allegations in the SAC, the Court construes Plaintiff to raise Fourth Amendment claims for illegal search and seizure, false arrest, false imprisonment, and failure to bring Plaintiff before a neutral magistrate for a probable cause determination.[2] "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (quoting *United States v. Watson*, 423 U.S. 411, 417–424 (1976)). "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. A seizure occurs even when an unintended person is the object of detention so long as the means of detention are intentionally applied to that person." *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). The Fourth Amendment also prohibits arrests without probable cause.[3] *Id.* Furthermore, where an officer lacks probable cause to effectuate an arrest, a plaintiff also has a separate claim under § 1983 for false imprisonment based on his or her detention pursuant to that arrest. *Adams v. Selhorst*, 449 F. App'x. 198, 201 (3d Cir. 2011). In the situation of a warrantless arrest, such as the one alleged here, the United States Supreme Court has held that a probable cause determination must be made by a judicial officer within 48 hours after the arrest to pass Fourth Amendment muster unless there is "a bona

---

[2] The Court also construes Plaintiff to raise a *Monell* claim based on the failure to train the officers, which does not affect the Court's *Heck* analysis and is discussed in the screening portion of this Opinion. The Court construes Plaintiff to raise his federal claims under 42 U.S.C. § 1983 and does not construe Plaintiff to raise any claims under state law.

[3] "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir.2003) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir.1995)); *see also Ingram v. Lupas*, 353 F. App'x 674, 677 (3d Cir. 2009).

fide emergency or other extraordinary circumstance." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 114-116 (1975); *see also Roberson v. Cty. of Essex*, No. 02-5532 (WHW), 2006 WL 2844425, at *5 (D.N.J. Oct. 2, 2006).

Having construed Plaintiff's claims, the Court now considers whether these claims are barred in whole or in part by *Heck*.[4] In *Heck*, the Supreme Court of the United States examined whether a person convicted of a crime may recover damages related to his conviction under 42 U.S.C. § 1983 for malicious prosecution.[5] The Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck*, 512 U.S. at 486-87. If, however, the district court determines "that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. The primary issue here is whether success on Plaintiff's § 1983 claims would "necessarily imply the invalidity of his conviction," and, thus, whether *Heck* bars those claims.

As the *Heck* Court pointed out, because some § 1983 claims would not necessarily invalidate a conviction, not all constitutional claims arising from an arrest and prosecution are

---

[4] *Heck* may be raised at the motion to dismiss stage. *See Curry v. Yachera*, 835 F.3d 373, 378, n.12 (3d Cir. 2016).

[5] The *Heck* Court construed the plaintiff's civil rights claim as analogous to malicious prosecution, finding that "the common-law cause of action for malicious prosecution provides the closest analogy to claims of the type [before the Court] because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 484.

subject to the rule. *See* 512 U.S. at 487 & n. 7. The Court offered two examples as guidance to district courts. *Heck*, 512 U.S. at 487 n. 6, 7. The Court observed that its substantive bar would preclude a Fourth Amendment claim for unreasonable seizure brought by a state inmate convicted of resisting arrest because, to prevail on that claim, "he would have to negate an element of the offense of which he had been convicted."[6] *Heck*, 512 U.S. at 486–87 n. 6. In contrast, the Court indicated that, because of evidentiary doctrines like independent source and inevitable discovery, claims "for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the Section 1983 plaintiff's still-outstanding conviction" because the claim, "even if successful, would not necessarily imply that the plaintiff's conviction was unlawful."[7] *Id.* at 486–87.

---

[6]As explained by the Court in *Heck*:

> A state Defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense.) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, the § 1983 action will not lie.

*Heck*, 512 U.S. at 487 n.6 (internal citations omitted).

[7] In *Wallace v. Kato*, 549 U.S. 384, 397 (2007) (holding that statute of limitations for a § 1983 claim seeking damages for false arrest begins to run at the time the claimant becomes detained pursuant to legal process), the Supreme Court clarified that *Heck* does not apply to anticipated future convictions, *id.* at 393, and approved the procedure of staying a § 1983 action while the criminal case is pending: "If a plaintiff files a false-arrest claim before he has been convicted . . . it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id.* (citing *Heck*, 512 U.S. at 487–488, n. 8). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Id.* at 393–94 (citing *Edwards v. Balisok*, 520 U.S. 641, 649

Following *Heck*, the Third Circuit has held that district courts must undertake a fact-intensive inquiry for each claim raised by the plaintiff and determine whether success on that claim would necessarily impugn the integrity of the plaintiff's criminal conviction.[8] *See Gibson v. Superintendent, N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 447-50 (3d Cir. 2005) (holding that a determination whether *Heck* applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry). In this regard, a guilty plea is generally treated as a conviction, and *Heck* bars the § 1983 action if success would necessarily imply that the plaintiff's plea or conviction was invalid. *See, e.g.*, *Curry v. Yachera*, 835 F.3d 373, 378–79 (3d Cir. 2016) (finding that plaintiff's malicious prosecution claim was barred by *Heck* where plaintiff pleaded *nolo contendere* to theft by deception and conspiracy relating to a theft and later brought a § 1983 civil rights action because Pennsylvania law treated the *nolo contendere* plea the same as a conviction and success on the malicious prosecution claim would imply that petitioner's conviction was invalid).

As noted above, the Court construes Plaintiff to allege Fourth Amendment claims of illegal search and seizure, false arrest, and false imprisonment.[9] *Heck* typically does not bar unlawful search and seizure claims. *See Heck*, 512 U.S. at 486–87; *Sanders v. Downs*, 420 F.

---

(1997); *Heck*, 512 U.S., at 487). Here, the matter was stayed while Plaintiff's underlying criminal case was pending, and the stay was lifted at the conclusion of his criminal proceeding.

[8] The Court notes that Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan have not analyzed Plaintiff's § 1983 claims in their briefing and instead appear to argue that the conviction bars Plaintiff's claims regardless of the type of claim.

[9] The Court does not construe Plaintiff to allege claims for malicious prosecution, which was the type of claim at issue in *Heck*, because the allegations in the SAC focus on Plaintiff's arrest and imprisonment prior to arraignment and do not provide any facts about his subsequent prosecution. *See Xenos v. Hawbecker*, 441 F. App'x. 128, 132 (3d Cir. 2011) (explaining that claims for unlawful confinement for a time period after a defendant has been arraigned "are more accurately characterized as malicious prosecution claims than false imprisonment claims").

App'x. 175, 179 (3d Cir. 2011) (citing *Heck*, 512 U.S. at 487 n. 7). With respect to false arrest and false imprisonment, the Third Circuit has stated that "because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, . . . false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence." *Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."); *see also Strunk v. E. Coventry Twp. Police Dep't*, 674 F. App'x 221, 224 (3d Cir. 2016) (finding that district court erred in finding false arrest and false imprisonment claims to be barred by *Heck* but affirming dismissal on alternate basis as plaintiff did not sufficiently allege absence of probable cause). As another court in this Circuit has explained, "*Heck* does not bar a claim where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question." *Rosembert v. Borough of East Landsdowne*, 14 F. Supp. 3d 631, 640 (E.D. Pa. 2014) (citing *McBride v. Cahoone*, 820 F. Supp. 2d 623, 632 (E.D. Pa. 2011)).

Nevertheless, where a plaintiff's success on his false arrest claim necessarily implies the invalidity of his conviction, it will be barred by *Heck*. In *Fields v. City of Pittsburgh*, 2017 WL 4857457, at *1-2 (Oct. 26, 2017), for instance, the Third Circuit affirmed the district court's dismissal of the plaintiff's false arrest claim as *Heck*-barred where the plaintiff had an altercation with police and was subsequently arrested and charged with aggravated assault, obstruction, and resisting arrest. The plaintiff then pleaded guilty to reduced charges of harassment and disorderly conduct in connection with the altercation with police. *Id.* Because the plaintiff was

11

arrested for resisting arrest and the guilty plea to the lesser charges amounted to an acknowledgement that probable cause existed to arrest him in connection with the altercation, Plaintiff's § 1983 suit for false arrest was barred by *Heck*. *Id.*; *see also Ianuale v. Keyport Twp.*, No. CV158256FLWDEA, 2016 WL 5955527, at *7-8 (D.N.J. Oct. 13, 2016)(finding that plea agreement precluding claim for false arrest/imprisonment where both Plaintiffs executed a plea agreement in which they stipulated that probable cause existed for their arrests).

Here, Plaintiff alleges in the SAC that he was unlawfully searched and arrested by the police after the arresting officer told him that "someone" said Plaintiff had a gun, and that the officers did not find a gun during the search. (*See* SAC at 6.) The JOC establishes that Plaintiff later pleaded guilty to Burglary and Attempt. (ECF No. 65-4, Ex. A.) Because the type of claims at issue – unlawful search, false arrest, and false imprisonment – do not automatically impugn the validity of a subsequent conviction arising from that arrest, *see Montgomery*, 159 F.3d at 26 n.5, the Court is unable to determine whether Plaintiff's success on his Fourth Amendment claims would necessarily impugn the validity of his guilty plea for Burglary and Attempt <u>without the full record</u>.[10] Based on the SAC and the JOC alone, the Court is unable to find that *Heck* bars Plaintiff Fourth Amendment claims, and the Court will deny the motion for judgment on the pleadings.

### b. Motions for Judgment on the Pleadings by Defendants Cranston and Rios

Defendants Cranston and Rios have separately moved for judgment on the pleadings. (ECF Nos. 66, 77.) The SAC alleges that Defendant Cranston, the Warden of Middlesex County Adult Correctional Center, failed to investigate Plaintiff's arrest, held Plaintiff at the County Jail

---

[10] Nor can the Court determine, at this stage of the proceedings, whether the officers had probable cause to search and arrest Plaintiff.

without probable cause, and failed to bring Plaintiff before a neutral magistrate within 24 to 48 hours to determine probable cause. The sole allegation against Defendant Rios is that he "lacked training as a[n] overseer for public entities."

To be individually liable under § 1983, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

Here, Plaintiff has provided no facts to suggest that Defendant Cranston was personally involved in the alleged Fourth Amendment violations, knew that Plaintiff was detained without probable cause, and/or was charged, as Plaintiff's custodian, with bringing Plaintiff before a neutral magistrate. Nor has he alleged any facts that would state a § 1983 claim against Defendant Rios. As such, the Court will grant the motions for judgment on the pleadings as to these two Defendants.

### c. Screening Under 28 U.S.C. 1915A

The Court also has screening authority over Plaintiff's SAC pursuant to 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915A (providing for screening of a § 1983 complaint in which a prisoner seeks redress from an employee of a government entity). "To make a *prima facie* case under § 1983, the plaintiff must demonstrate that a person acting under color of law deprived him of a federal right." *See Groman v. Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Here, the

Court finds that Plaintiff sufficiently states Fourth Amendment § 1983 claims for illegal search & seizure, false arrest, and false imprisonment based on his warrantless arrest by Conway and Monaghan on July 11, 2014.

The Court, however, will dismiss the § 1983 claims based on Plaintiff's allegation that he was not brought before a neutral magistrate for a probable cause determination within 24-48 hours of his arrest. The Supreme Court has held that the Fourth Amendment requires that an individual "may not be arrested in the absence of probable cause and may not be detained for over 48 hours without a neutral magistrate's review of that probable cause determination." *Stewart v. Abraham*, 275 F.3d 220, 228 (3d Cir.2001) (citing *Gerstein*, 420 U.S. at 114; *County of Riverside*, 500 U.S. at 56). It is the function of the reviewing neutral magistrate to determine "whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Stewart v. Abraham*, 275 F.3d 220, 228 (3d Cir. 2001) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964.)) If the delay exceeds 48 hours, the government bears the burden to prove that the delay was justified. *County of Riverside*, 500 U.S. at 56–57.

Here, Plaintiff's SAC alleges that Defendants Gliottone and DiMarcello did not bring the alleged victim before a neutral and detached magistrate to sign a complaint against Plaintiff and that the victim did not make a verbal, written or recorded statement in the presence of a judicial officer. (SAC at 7.) Instead, Gliottone allegedly signed the complaint as the complaining witness with an unreadable signature. (*Id.*) DiMarcello allegedly telephoned Judge Barow for authorization for the arrest without presenting physical evidence and written, verbal, or recorded statements from the alleged victim. (*Id.*) On Saturday July 12, 2014, Judge Barow "authorized the arrest [of Plaintiff] over the telephone without investigating physical evidence and bare [sic]

witness to written, verbal, or recorded statements from the alleged victim." *Id.* Thus, from the facts alleged, it appears that Judge Barow determined that there was probable cause to detain Plaintiff on July 12, 2014 – one day after Plaintiff was arrested without a warrant. Later in the SAC, Plaintiff appears to state that Judge Barow did not sign the complaint-warrant and/or make a probable cause determination until July 16, 2014. This statement, however, flatly contradicts his earlier allegation that Judge Barow authorized Plaintiff's detention on July 12, 2014, and the Court declines to credit this conflicting allegation. Furthermore, the Constitution does not require that Plaintiff or the complaining witness be taken <u>in person</u> to a judicial official for a determination of probable cause. And, as the Court noted in its prior Memorandum Opinion, the procedure for obtaining an arrest warrant utilized by Gliottone and DiMarcello is authorized N.J. Ct. R. 3:2-3(b) ("A judge may issue an arrest warrant on sworn oral testimony of a law enforcement applicant who is not physically present. Such testimony may be communicated by the applicant to the judge by telephone, radio or other means of electronic communication."). Because it appears from the facts alleged that Judge Barow made a determination of probable cause approximately one day after Plaintiff's warrantless arrest, Plaintiff fails to state a claim for relief under § 1983. The Court will therefore dismiss the § 1983 claims as to Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan premised on the failure to bring Plaintiff before a neutral magistrate for a probable cause determination within 24-48 hours after his arrest.

The Court will also dismiss the remaining claims against Anthony Caputo, who is identified in the SAC as the Police Director at New Brunswick Police Department. According to the SAC, Defendant Caputo failed to "do a thorough investigation of the arrest" and failed to train his officers. (*Id*.) These allegations are conclusory at best and fail to state a claim for relief. Furthermore, Plaintiff has not identified or provided any facts regarding the alleged

failure to train or any other municipal policy or custom sufficient to hold the city of New Brunswick liable under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978).[11]

## V. CONCLUSION

The motion for judgment on the pleadings brought by Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan is denied for the reasons stated in this Opinion. The motions for judgment on the pleadings by Defendants Cranston and Rios are granted. Pursuant to the Court's screening authority under § 1915A, the Court finds that Plaintiff sufficiently states Fourth Amendment § 1983 claims for relief for illegal search and seizure, false arrest, and false imprisonment based on his warrantless search and arrest by Conway and Monaghan on July 11, 2014. The Court will dismiss the § 1983 claims as to Defendants Caputo, Conway, DiMarcello, Gliottone, and Monaghan premised on the failure to bring Plaintiff before a neutral magistrate for a probable cause determination within 24-48 hours. The Court will likewise dismiss the remaining claims against Defendant Caputo.[12] An Appropriate Order follows.

   /s/ Freda L. Wolfson\_\_\_\_
Freda L. Wolfson, U.S.D.J.

Date: November 14, 2017

---

[11] Although § 1983 can be used to obtain relief from local governments, it does not hold governments vicariously liable for their employees' illegal acts. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). Rather, liability "must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir.2007) (emphasis added). "Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Brown*, 520 U.S. at 400.

[12] Because there are no live claims against Defendants Caputo, DiMarcello, Gliottone, Cranston and Rios, the Court will direct the Clerk of the Court to terminate these Defendants from the docket.